# Smith *et al. v.* Wert and Wife.

# Woosley *et al. v.* Wert and Wife.

*Bill in Equity by Purchasers at Administrator's Sale, to enjoin Actions of Ejectment by Heirs.*

1. *Secondary evidence of records.*—When records become material in the determination of legal rights, and their existence and subsequent loss or destruction are shown, their contents may be proved by secondary evidence, like other documentary evidence.

2. *Proof of ancient transactions.*—Neither reason nor law requires that an ancient transaction shall be proved as clearly, and with such fullness of detail, as is exacted in affairs of recent occurrence.

3. *Sale of decedent's lands under probate decree; proof by "depositions as in chancery proceedings."*—Prior to the passage of the statute approved February 7, 1854, "to regulate the sale of real and personal property by executors and administrators" (Code, § 2457), it was not necessary to the validity of a sale of an intestate's lands by order of the Probate Court, on the application of his personal representative, that the record should show that the averments of the petition were proved by "depositions as in chancery proceedings."

4. *Same; presumption as to report and confirmation of sale.*—The payment of the purchase-money by the purchaser at the sale, the relinquishment of possession by the intestate's family, the execution of an informal deed by the administrator, the entry and continued peaceable possession of the purchaser, and the destruction of the records of the Probate Court, being shown (as in this case), the report and confirmation of the sale will be presumed, after the lapse of nineteen years, on bill filed by sub-purchasers to enjoin actions of ejectment by the heirs.

APPEAL from the Chancery Court of Madison.

Heard before the Hon. WILLIAM WEEDEN, as special chancellor, selected by the parties on account of the incompetency of Hon. H. C. SPEAKE, who had been of counsel in the cause.

The bills in these two cases were filed on the 24th March, 1873, in the Chancery Court of Jackson county; and the causes were transferred to Madison county by consent. The complaiants in one case were Brooks Smith, Gabriel M. Smith, and Barton B. Smith; and in the other, Aaron N. Woosley and his wife (Delilah Woosley), Richard H. Ogilvie, William Ogilvie, and James Ogilvie. The defendants, in

[Smith et al v. Wert and Wife.]

each case, were James H. Scruggs, as administrator of the
estate of William J. Sanders, deceased, Mrs. Margaret Wert,
the only child and heir at law of said Sanders, and her hus-
band, Michael C. Wert. The object of the bills was to enjoin
two actions of ejectment, which Mrs. Wert had instituted in
the Circuit Court of Jackson county, on the 5th September,
1872, to recover the possession of certain lands, which she
claimed as the heir at law of said Sanders, and which were
in the possession of said Woosley and Barton B. Smith res-
pectively, each claiming to hold by mesne conveyances under
purchasers from said Scruggs as administrator. The mate-
rial facts, as shown by the pleadings and evidence, are stated
in the opinion of the court; and a fuller statement of the
evidence is not deemed necessary to an understanding of the
points decided. On final hearing, on pleadings and proof,
the special chancellor dismissed the bill in each case; and
his decrees are here assigned as error. The two cases were
argued and submitted together.

L. P. WALKER, and THOS. H. WATTS, for appellants.

D. P. LEWIS, *contra*. (No briefs on file.)

STONE, J.—These two causes, on all material points of
merit, are identical, and we will consider them together.
The material questions arise as follows: In August, 1853,
William J. Sanders died, intestate, owning the lands in con-
troversy. Mrs. Wert is his sole surviving heir at law, and in
1872, about the time, or shortly after she arrived at twenty-
one years of age, she instituted actions of ejectment to re-
cover the lands. Mr. Sanders left a widow, who was enti-
tled to dower in the lands, and who intermarried with Parker
in 1860. The present bills were filed to enjoin the actions of
ejectment, and to obtain title to the lands. The bills allege
that, shortly after the death of Mr. Sanders, James H. Scruggs,
the brother of Mrs. Sanders, was appointed administrator of
his estate; that he filed an application in writing, in the
Probate Court from which he received his appointment, for
an order to sell the lands, setting forth one or more of the
three grounds, naming them, for which lands of decedents
were then permitted to be sold by order of the Probate
Court; that the court took jurisdiction of the petition, and
granted the order of sale, during the year 1853; that about
the first of January, 1854, the administrator sold the lands,
pursuant to the order of the Probate Court, and those under
whom complainants claim were the highest bidders, and be-
came the purchasers—one at about twenty dollars per acre,

and the other at about eight dollars per acre; that they executed notes, with sureties, for the payment of the purchase-money, according to the order and sale, which notes they paid in full; that Scruggs, the administrator, reported the sale to the Probate Court, and it was confirmed; that Scruggs executed deeds to the purchasers, conveying said lands, but the deeds were so drawn as to be only the personal contracts of Scruggs, and did not devest the title of the heirs at law. The bills then allege that, in January, 1854, the purchasers at said sales went into possession, under said purchase, and they, and those claiming under them and in their right, have had quiet, undisturbed possession ever since, a period of about nineteen years. It is then averred in the bills that, during the war between the sections, the records of the Probate Court of Jackson county, in which the administration and order of sale were granted, together with all record of this administration, were carried off and lost, or were destroyed. There are some averments touching this administration after its removal to Madison county, but the view we take of these cases renders it unnecessary to comment on them.

The answers raise a great many issues of fact. They deny that Scruggs was ever appointed administrator; deny that he filed a proper petition, or obtained an order to sell the lands; deny that he reported the sale, or that it was confirmed; and, in fact, deny almost every allegation of the bills, tending to show the estate was devested of any interest in the lands.

We premise that the "act to regulate the sale of real and personal property by executors and administrators," approved February 7th, 1854 (Pamph. Acts, 55; Code of 1876, § 2457), exerts no influence in this case. The order of sale and sale were made, if made at all, before that statute was enacted. Their validity must be tested by the statutes of force before the act of February 7th, 1854. Those prior statutes were construed, so fully and so often, in this court, that we consider it unnecessary to repeat the principles settled.—1 Brick. Dig. 939, §§ 352 to 355, inclusive.

When records become material in the determination of rights between parties, and those records are shown to have existed, and to have been afterwards lost or destroyed, their contents, like those of documentary evidence, may be shown by testimony in its nature secondary.—1 Greenl. Ev. § 509; Derrett v. Alexander, 25 Ala. 265.

It is contended for defendants, appellees here, that there is a failure to establish each of the following propositions, and that a failure in any one is fatal to the relief prayed by complainants: first, that Scruggs was appointed adminis-

[Smith et al. v. Wert and Wife.]

trator ; second, that he filed a proper application for an order of sale, or, in fact, that he filed any application at all ; third, that he made proof of the averments in the application, showing a necessity for a sale ; and fourth, that the administrator reported the sale and had it confirmed.

These transactions, if they existed, must have occurred from sixteen to nineteen years before the witnesses were called to testify in regard to them. In the meantime, a great civil and social upheaval had disturbed the commonwealth ; and it is not surprising that the connection and details of mere private business, which had their inception and consummation when peace reigned, should have become somewhat dissevered and obscured. Few persons are so gifted in memory, as to retain in vivid recollection the details of a past transaction, after it has been long dismissed from attention, as a finished work. The mind is wont to disincumber itself of burdens which it esteems as no longer possessing a living, vital force. Hence, neither reason nor law requires that an ancient transaction shall be as clearly proved, as we expect in affairs of recent occurrence.—1 Brick. Dig. 808 ; *Gantt v. Phillips,* 23 Ala. 275 ; Best on Ev. § 393 ; 2 Whar. Ev. § 1338.

We have examined the testimony in these cases with much care. We do not attach much importance to the testimony of the witness Parker. His denial of ever having received any money from Scruggs, as administrator, is so clearly disproved, that it weakens the force of all his other statements. We do not doubt, in the least, that Scruggs was appointed administrator of the estate of Sanders ; that a proper application was filed in the Probate Court of Jackson county, to obtain an order to sell the lands, setting forth one or more of the statutory grounds authorizing such sale ; that the lands were in fact sold by the administrator, as charged in the bills, and that the entire purchase-money was paid in each case. The fact that the purchasers, immediately after the sale, went into possession of the lands (Mr. Sanders' family moving off), and they and those claiming under them remained in undisturbed possession for about nineteen years, during which long time neither Mrs. Sanders, now Parker, nor Scruggs, her brother, and the administrator of the estate, nor the guardian of the heir, made any complaint, or claim to the lands, goes very far to show that the sale was authoritatively made, and the terms of sale complied with. The deeds executed by Scruggs, though informally drawn, also furnish confirmation of this view. We showed above that this application was made and acted on before the statute of February 7th, 1854, was enacted. Presented collaterally, as

the question comes before us in these cases, it is not material to the validity of the sale that the record, or proof of it, shall show that the averments of the petition were proved "by deposition as in chancery proceedings."—1 Brick. Dig. 939, § 355.

One inquiry remains: Were the sales reported and confirmed? One witness testifies that he saw such entry on the records of the Jackson Probate Court. We think the evidence on this disputed fact is less satisfactory than on any other issue raised in these records. We think, however, we are relieved from a decision of this question. The facts o this case, noted above—the payment of the purchase-money, the long-continued, quiet possession under the purchase, the informal deeds executed by the administrator—raise the presumption, that the sales were reported and confirmed, and, in our opinion, dispense with all proof of it. In the case of *Tipton v. Powell*, 2 Coldwell (Tenn.), 19, the question of the sufficiency of a judicial sale to convey title to lands, was presented. The court said: "The record of the cause in which it was made, is only partially exhibited, and it does not show the sale was ever confirmed. But it was made under a competent jurisdiction, and, in the absence of all countervailing proof, both upon principle and authority, its confirmation and regularity will be presumed. The parties at the time recognized its validity, and they can not now be heard to gainsay it." In *Gowan v. James*, 10 Smedes & Mar. 164, the court said: "In chancery, some reports are conclusive, and others require confirmation. Among the latter is the report allowing the highest bidder at a sale under a decree to be the purchaser. In *Tooley v. Gridley*, 3 S. & M. 514, one of the errors complained of was, that no report of a sale was made to the court. This court said, that 'there having been no confirmation of the sale, nor any thing equivalent to it, the sale under the decree was incomplete, and may be set aside by the court. Confirmation of a report of a sale is usually necessary to its validity.' It is not intended, here, to require the rigid strictness of a confirmation by the court. Parties, by their acts, may cause a confirmation, as valid as if made by the court, or, perhaps, great lapse of time may be equivalent to a confirmation by the court." These principles are stated by Rorer in his work on Judicial Sales, without dissent.—Sections 13, 16. We feel it our duty to presume these sales were reported and confirmed.

In what we have just stated, we have proceeded on the concession that report and confirmation, proved, or presumed from conduct and lapse of time, are essential to a valid judicial sale. It is certainly true that, when an admin-

istrator makes sale and conveyance under an order of the Probate Court, report and confirmation must be made, before the title can pass by the deed of the administrator.—*Hutton v. Williams*, 35 Ala. 503; *Bland v. Bowie*, 53 Ala. 152; *Mc-Cully v. Chapman*, 58 Ala. 325; *Williamson v. Berry*, 8 How. U. S. 495, 546; *Taylor v. Gilpin*, 3 Metc. Ky. 544; *Mason v. Osgood*, 64 N. C. 467. We need not, and do not, decide whether cases might not arise, in which the court of equity would decree title to the purchaser of lands sold at judicial sale, and that without previous report or confirmation of the sale. We leave that question open, without intimation either way. The complainants in the court below are each entitled to the relief they have severally prayed.

In the case of *B. B. Smith, Executor, et al. v. Wert and Wife*, the decree of the chancellor is reversed, and a decree here rendered, perpetually enjoining the further prosecution of the action of ejectment described in the pleadings. The chancellor will enter the proper decree, devesting all title to the lands out of Margaret Wert, and vesting it in the proper parties, as shown by the pleadings and proofs in this cause. The appellees, Wert and wife, will be taxed with the costs of appeal in the court below and in this court. Reversed and remanded, for further proceedings in accordance with this opinion.

In the case of *Aaron Woosley et al. v. Wert and Wife*, the decree of the chancellor is reversed, and a decree here rendered, perpetually enjoining the further prosecution of the action of ejectment described in the pleadings. The record tends to show that there is some unpaid purchase-money due from Mrs. Woosley to the Ogilvies. In decreeing title out of Mrs. Wert, the chancellor will so shape his decree as to preserve and protect the rights of the Ogilvies as vendors. We remand the cause for further proceedings in accordance with this opinion. Let the costs of appeal in the court below, and in this court, be paid by Wert and wife.

BRICKELL, C. J., not sitting, having been of counsel,